Case number 243960, Bandol Lim et al. v. Edward Hightower et al., oral argument not to exceed 15 minutes per side. Mr. Killoren, you may proceed for the appellants. Thank you. May it please the Court. My name is Robert Killoren. For the appellants, Andrew and Joshua Strickland, who are class representatives, I'd like to reserve six minutes for review. We are here because we believe that the District Court made a number of errors in deciding this case, and we believe they are substantial but somewhat subtle, and you have to think about the details of the case and the context to appreciate the seriousness of the error. The first error that I'd like to bring to the Court's attention is where the judge decided Excuse me for a minute. I just need to make sure I'm starting where I'm supposed to start. The district judge improperly decided or improperly reported on the facts that when Hightower traveled all the way to Taiwan, and he traveled there because Foxconn told him they would not comply with the agreement, the joint venture agreement, and provide detailed plans to car models C and E unless he traveled to Taiwan. He went there. He was supposed to meet with the head of Foxtron, not Foxconn. Foxtron was the affiliate of Foxconn. Foxtron, he learned, was going to be his own competitor. Foxtron held the blueprints or the plans for the car models that he had to have to be able to fulfill his part of the joint venture agreement with Foxconn. Now, the district court said that he went to Taiwan and was unable to meet with Foxconn. Foxconn was his joint venture partner. He met with them routinely. Not being able to meet with Foxconn would not have been significant, but not being able to meet with Foxtron, the company holding the blueprints he had to have, was tremendous, and it foretold other future problems because Foxtron, he then learned, was going to be his competitor, which is a complete surprise, and Foxtron would obviously have a big advantage because Foxconn was an affiliate of Foxtron. So, in context, after Foxconn— What did he say? So, what's your argument? The point is that the district judge, everything the district judge did was lack of context and lack of appreciation of the context. The district court said that when he went to Taiwan, he was unable to meet with Foxconn, and that's his partner. That would be immaterial. That would be insignificant. Can you talk about the merit of that one? I'm curious. I'm sorry? So, Hightower should have come back and said, oh, I didn't get to meet with the Foxtron guy. I mean, it was material for him not to say that? Or when he said, oh, the meetings were generally successful, that was false because he hadn't met with this other guy? It was false for a number of reasons, and that's the point. All of these breaches of contract kept building up until October when Lordstown sent a letter that said we want to get out of this agreement because you've had so many breaches of our contract. But on that particular trip, the breaches were that he was not able to meet with Foxtron, who had the blueprints he needed. He also learned, arguably in breach of the joint venture agreement, that Foxconn was going to be giving their primary business to Foxtron, and so that Foxconn would no longer be the primary provider of services in North America to Foxconn. All of this is in the context that Lordstown was a high-flying company that was doing great and bought the largest automobile manufacturing plant in North America, 6.2 million square feet. But then Foxconn swooped in when they became desperate for cash, and the only way they could get a deal going, get a relationship going with Foxconn, was to sell their crown jewel. Now Foxconn held all the power. All of that was public knowledge before the class period. So investors would have been very wary about their stock that had fallen from $400 a share and over to less than $40 a share. Now this new business venture was in place, investors would have been critically concerned about the materiality of how the relationship was unfolding. That was not being disclosed to investors because Lordstown could not afford to, because that would let the cat out of the bag. And so the judge appears to not have appreciated that particular fact and others, and that tainted everything about his decision. If you don't understand the context, then statements that are not being made might seem like they are trivial and not material and no need to be reported. But if you understand the context, then you see that they were breaching their duty to report to investors. So that material error and the understanding of the case, we believe, is significant. So I understood your case to be mostly about these statements that were made, and there were six of them that seemed to be the main ones. But you're saying it's not about that, it's about what they didn't say? It's a failure to disclose case? It's a combination. We believe that some of the statements that they made to the public were false, about how well the relationship was going. Others of the statements, like when he said, we got back from Taiwan and it was just a fine trip, were false by omission, that he didn't disclose all the problems. Now, once you have that faulty understanding by the district judge, then when the judge decided that it was appropriate to take judicial notice of defendants' defenses to these claims, that was another egregious error. Defendants said, no, the relationship was just fine, judge, and why don't you look at our press releases that we have on file from Foxconn, the alleged party that we were not getting along with. The judge, I forget his exact words, but it's basically to complete the understanding of the case, I'm taking into account these press releases issued by Foxconn. Were the press releases referred to in the complaint? Yes. So was it taking judicial notice? He was, Your Honor. He took judicial notice of all the eight documents that defendants wanted him to take judicial notice of. I'm sorry? It's a female judge. I apologize. Yes, yes, Judge Pearson, yes. She took judicial notice of eight documents that defendants proffered basically to support their case, and we think that that is also reversible error. That is treating this like a motion for summary judgment and entertaining evidence from defendants to draw conclusions and assumptions that contradict plaintiffs' well-pled allegations. Beyond that, taking that judicial notice and forming an opinion that plaintiffs' allegations are wrong, then had the judge view everything else in the wrong context, and then a whole series of incorrect rulings and incorrect rulings on the false statements ensued from that. That's the premise of our case. I'll stop there. Okay. You have your rebuttal time. Thank you. Good morning, Your Honors. May it please the Court. Jonathan Rotenberg from Kenton Mooch and Rosenman on behalf of the appellees. The district court correctly dismissed plaintiff's amended complaint on multiple independent grounds and should be affirmed. At its core, plaintiff's case improperly attempts to co-opt allegations from Lordstown's adversary complaint against Foxconn, which was filed many months after the allegement statements in this case. This is a fraud by hindsight tactic, and it fails for two principal reasons. First, plaintiffs cannot demonstrate that the challenge statements were false or misleading when they were made with a particularity required under the PSLRA. And second, and this is very critical, later learned information about Foxconn's apparent bad faith as alleged in the adversary complaint has no bearing on whether defendants made earlier challenge statements with a strong inference of scienter as defined in the Supreme Court's decision in Taleb's. This burden is a high one, and it obligates plaintiffs to show that defendants consciously disregarded the truth and ignored multiple obvious red flags. Plaintiffs must also raise a cogent and compelling inference of fraud that is at least as compelling as any opposing non-fraudulent inference, and this Court's recent decision in Servicemaster, I think, plaintiffs claim... If I could just try one theory out. So Laurentown's statements included statements that the IA's direct investment in Laurentown was a great development and did not mention that the reason why the IA occurred was because Foxconn had breached the joint venture agreement. So why wouldn't that omission be a material omission that makes it seem like everything is going splendidly between Laurentown and Foxconn, when in fact Laurentown was just trying to make the best of things given that Foxconn had already breached the primary agreement, the joint venture agreement? Right, so I believe that the statement was that it was a more favorable, it was direct and streamlined, it was a more favorable arrangement, Your Honor. And it was a more favorable arrangement because under the JV model, all the money that was invested by Foxconn had to go and be used directly by the joint venture, but under the investment... Wouldn't a material fact be that the joint venture was kaput because Foxconn had breached the joint venture and so Laurentown was just making lemonade out of lemons at the time? No, in fact, this was a positive evolution from Laurentown's perspective. There were some issues with the joint venture, clearly. I think there's no dispute about that. Laurentown wanted to move it forward. There were issues regarding obtaining certain models and there were ongoing negotiations and discussions going back for several months. But ultimately, once Laurentown sent the breach letter in October of 2022, within a matter of months, the relationship, Foxconn had come to the table, had really doubled down on the relationship and had evolved the relationship into this direct investment model, had invested $52 million directly into Laurentown, doubling its investment, becoming a greater than 10% owner. That $52 million was almost the entire amount that they were obligated to provide over the entire course of the joint venture. So had Laurentown revealed that Foxconn had breached the joint venture agreement at that point? At that point, had they revealed it? My understanding is they had not revealed it at that point. So why isn't that a material omission? It's not material anymore because the relationship had totally evolved into something that was far superior. So at that point, if they had come out and said, hey, they breached this agreement, but now we've got something that's far better and now we've got almost all of the investment that Foxconn was required to provide under the entire course of the joint venture agreement. At that point, once they have the investment agreement, I don't see why that would be material at all. We've moved on from that. I think in addition, there's cases like... Doesn't it show, arguably, that Foxconn is not a trustworthy partner? I don't think it does. And in fact, so I think Appellant's counsel mentioned there was just a series of breaches. But virtually all of those breaches that are mentioned in the amended complaint kind of follows the same script where Foxconn drags its feet or there's an issue and then ultimately Laurentown confronts Foxconn or raises the issue, there's some negotiation, and then there's a positive resolution of that dispute in Laurentown's favor. And we can kind of take these one by one. I mean, this is one that's repeated often, but that Foxconn was dragging its feet about negotiating a joint venture agreement. But as the amended complaint admits, Foxconn did negotiate the joint venture agreement and executed that agreement when the parties closed on the APA in May of 2022. The Appellant's brief also mentions that Foxconn instituted a policy at the Laurentown facility that required LMC or Laurentown employees that wanted access to a Foxconn floor to be supervised by a Foxconn employee. But the brief also mentions that once Laurentown took issue with that policy, Foxconn rescinded it. We've also discussed a little bit about... When did Foxconn become a bad actor? Right. Well, if you were to ask my client, in hindsight, Your Honor... They were a bad actor at the time when they were breaching the IA? At the time, right in context, though, it would not have been apparent that they were a bad actor at all because of all these issues. Except for the fact that they were breaching the agreement. They were breaching. And you had to renegotiate and then get a better, now you're saying, oh, we got a better deal. Right. Your Honor, there are often hiccups and speed bumps in the course of a contractual relationship. If you were to look at a case like this court's decision in Freeburg v. Wolf, where there are ongoing contractual negotiations, the company even mentioned that an agreement had been reached and it only became revealed later that, in fact, the new contract was far worse than the contract that had previously been in place and the court held that there's no obligation to disclose ongoing contractual negotiations or disputes until there has been some sort of resolution. There's been a bright line rule drawn on that. If you look at the Second Circuit's decision in Express Scripts as well, there you had a counterparty that was demanding $15 billion in concessions, contractual concessions, under an ongoing contract. Express Scripts, the defendant in that case, made comments a month before the end of the class period about how they were looking forward to the good faith negotiations. I think there was a statement that the defendants were excited about the ongoing negotiations. No additional details were disclosed. A month later, their counterparty sues, and the court there held there's no obligation to discuss ongoing negotiations, even negotiations that have a poor tenor. I think the case was clear. There is a bright line rule here, which is that until the discussions have been resolved, until some sort of finality has been reached, there's no duty to disclose what's been happening. And you could see the pragmatic reasons for that, because in this case here is a great example, where I think it would be unhelpful to the shareholders and the parties that are involved in the relationship to have required that Lordstown disclose the problems with the JV when a month or two later they entered into the investment agreement. Doesn't that hinge on your belief that the investment agreement is better than the joint venture that was breached by Foxconn was? And the problem is that your clients were saying, oh, how wonderful, we now have this new IA and it's superb, but they didn't reveal that Foxconn had breached the prior agreement, the JV, and that Foxconn had been doing all these arguably bad things and this new agreement was perhaps not as good and was necessitated because of the breach of the JV. Your Honor, it's plain as burden under the PSLRA to explain why the new agreement was not better. They haven't done that. They don't do that in the complaint. They don't do that in their briefing. They mentioned CFIUS, the CFIUS filing. First of all, this would not have been the first CFIUS filing required in the relationship. A CFIUS filing was required and made, and CFIUS approval was granted in connection with the APA. A CFIUS filing was also made in connection with the IA. Their complaint seems to be that there was a three-week delay, but as the amended complaint makes clear, that was precipitated by SoftBank, who was initially a partner to the investment agreement backing out. There were some additional contractual negotiations that had to be made. Ultimately, the CFIUS filing was made three weeks late. I think there was one of the challenge statements was made during that three-week period. It doesn't mention regulatory hurdles or any specifics about the CFIUS filing, and it was made a single day, one day before the CFIUS filing was submitted. Clearly, by that point, the parties knew the CFIUS filing was going in. CFIUS approval was granted in April. Again, they haven't shown why the investment agreement wasn't superior, wasn't more favorable. Again, I go back to this idea. The use of the funds under the investment agreement were far more flexible and favorable because some of it would go towards the use of the new EV program, but some of it could also be used by Lordstown for some desperately needed working capital. Correct me if I'm wrong. This case is at the pleading stage, correct? Correct. When you say they haven't shown, you mean they shouldn't put in the complaint this kind of information? Exactly, Your Honor. They're required under the PSLRA to provide particularized allegations. This isn't a no-disbelief or a plausibility case. They have to show with particularity why the statements were false, which means some specifics as to why the new agreement was not more favorable. If they haven't done that, then they don't meet their pleading burden here, and they haven't done it. The main example, again, is they keep coming back to the CFIUS issue. I simply don't understand how that makes it less favorable. The filing was made. They got CFIUS approval. You're basically contesting the idea that the only reason why the new agreement is signed is because there was a breach of the old. It doesn't matter because the new agreement is better than the old. Right. Once the new agreement is signed, the fact that the old agreement was— The fact that there hasn't been full compliance with agreements by Foxconn is, you're saying, irrelevant. It is irrelevant at that point. They have a new agreement. They've got the $52 million direct investment. They've got flexibility about how to use the money. They've got flexibility about which vehicle program to use, all of which was not available under the JV. At that point in time, why would that have been material? I think it is a materiality point, Your Honor, if I could just apologize, but I think it's also an issue of did they have a duty to disclose it. I don't think they did. I don't think they had a duty to disclose under Freeberg, under Express Scripts, the tenor or direction of ongoing contract negotiations. Yeah, but the contract negotiation has concluded at that point. Right. But I guess the question for me if I were an investor would be should I know that one of the parties to this big agreement is somebody who is not complying with the agreements in the past, and therefore I should be dubious that this new agreement, which you're saying is better, which I'll accept as a fact now, this new agreement which is better is with the same hypothetically bad party who breached the prior agreements. And I would think as an investor that I would want to know that continuing to invest in a company that is sort of under the gun because their party that they're having to deal with because they have all the money is doing whatever they want regardless of what a particular agreement says. Right. So, I mean, I'd say two things to that, Your Honor. The first is that the fact that an investor might want to know something, the fact that some information might be deemed material does not trigger necessarily a duty to disclose. That's a separate element under a 10b-5 claim. And number two, I just, you know, I don't agree that if you look at, you know, that everything Foxconn did to that point was clearly a breach. Right. I mean, they had, if you're going back to 2021 before the class period, they had signed an agreement of principle. Foxconn invested over $50 million directly into Lordstown. They had closed on the APA. Once the investment agreement was signed, there was an additional $50 million direct investment. I think it's also important to point out that they had collaborated on the other aspect of the partnership, which was the endurance. By the end of September 20, so I think it's clear that before the partnership began, LMC had not produced any endurance vehicles. The endurance was the flagship LMC legacy vehicle. They had not produced a single one. By the end of September 2022, just a few months after the partnership began, Foxconn and LMC had begun to produce the endurance and had manufactured approximately 40 vehicles by March of 2023. LMC had disclosed before the start of the class period that the endurance's production cost was well above its anticipated selling price. So it was unlikely to limit its expected production through 2023 or potentially longer. LMC also disclosed that the production of the endurance would occur initially at a very slow rate. So any delays were not concealed by defendants and do not suggest that collaboration with Foxconn did not occur. So you have the agreement of principle, Foxconn invests money. You have they closed on the APA. Foxconn invests more money, becoming an over 10% owner. You know, I'd just like to make this point again because I think, and this goes really to Scienter, they haven't alleged even a plausible inference of Scienter here. I mean, who would have imagined that after investing over $52 million in Lawrence Town becoming greater than 10% owner, that only a few months later they would repudiate their relationship based on a technicality, a technicality. I don't think, you know, I think at that point, I don't think they've met their burden of pleading either falsity or Scienter under the PSLRA. And your red light is on. Yes, I see that. Thank you, Your Honor. We kindly request that the court affirm dismissal. Thank you. Thank you. Your Honors, I would direct the court's attention, if I may, to paragraph 79 and 80 of the complaint where we do plead with particularity that the new agreement was more restrictive. But this is exactly the kind of error that we were talking about where the district court disregarded our well-plead pleadings, basically treating this like a motion for summary judgment, taking into account defendants' new evidence of how the change was not more restrictive, and then going with that approach. That is simply not the way a motion to dismiss under 12b-6 is supposed to work. The judge just made a habit of disregarding our well-plead pleadings and making effectively findings of fact in favor of Foxconn. And we believe that that is simply reversible error. And my friend says that they were just dragging their feet while this, that, or the other happened, and there was this, that, or the other delay. When you're dealing with one party that has all the leverage, all the money, and the small party, Lordstown, who is drying up for lack of cash, then dragging your feet can only have one outcome, and that is that the small company goes away. And that's what happened. To this day, Lordstown is still operating that plant, manufacturing something, but it's not electric vehicles. But anyway, we are not pleading. And by the way, of course, the end of the story is that at the end of the class period, Lordstown said, oh, gee, everything they were doing is terrible, they're bad people. And their complaint, they refer to it as a hidden agenda and say that they were acting, that Foxconn was acting in bad faith. We are not pleading fraud behind sight. We are not relying on the allegations that were disclosed at the end regarding Foxconn's bad faith. If you view this case in the proper context, as Judge Moore's questions indicated, a reasonable investor would have wanted to know breaches of contract, with or without bad faith. That's simply something that would be material unless you don't accept the pleadings that the new contracts were less favorable. But we played that with particularity, and the judge simply did not accept our pleadings. We also did not learn or we are not pleading that everything was revealed at the end. We had three independent confidential witnesses who were inside the company who testified that it was clear to them through lack of work, lack of supplies, and delays that Foxconn was trying to run Lordstown out of business. So it's not fraud behind sight. It's actually fraud by live testimony and real-time experience from employees in the plant at the time. Sure, the complaint in bankruptcy revealed everything, but that's not our case, and that's the problem. Now, the district judge seems to have crafted her opinion around that one disclosure at the end, which was actually an ancillary reason for scienter in our pleadings. That disclosure at the end, even if it never happened, given the facts as we've pled it, the breaches of contract, the constant renegotiations, and there were a number of them. November 7, November 15, then December 22. Each time, Foxconn extracting a heavier and heavier toll, in our opinion, in our pleadings, which is what should count for this decision, they were more oppressive to Lordstown, eventually driving it out of business. But all of that would have been material to investors, whether or not there was a big disclose at the end. Our case has got legs, even if you completely discount the big revelation of bad faith and fraud at the end. The point is, the district judge didn't view our allegations in context and didn't agree that these things should have been disclosed to investors during the life of the relationship, which was fairly short. If there are no questions, I'll stop there. Thank you. Thank you both for your argument. The case will be submitted.